ELIZABETH BEESE, PETITIONER-APPELLANT, v.
FIRST NATIONAL STORES, RESPONDENT-RESPONDENT.

Argued May 21, 1968—Decided June 28, 1968.

*Mr. Jack Mandell* argued the cause for appellant (*Messrs. Balk, Jacobs, Goldberger & Mandell,* attorneys).

*Mr. John W. O'Brien* argued the cause for respondent (*Messrs. O'Brien, Brett & O'Brien,* attorneys).

PER CURIAM.   The Division of Workmen's Compensation refused to reopen its judgment which had dismissed the appellant's petition for lack of prosecution. The County Court and the Appellate Division affirmed. We granted certification (50 *N. J.* 406) and remanded the matter to the Division for the taking of testimony. That has been done and the testimony is part of the record now before us.

Clarence E. Beese died on March 26, 1963 and on October 22, 1963 a dependency claim petition was filed in the Division on behalf of his widow Elizabeth Beese and their 3 minor children. An answer was filed on the employer's behalf and the matter was listed for pretrial conference. There were several adjournments at the request of the petitioner's attorney and in April 1964 the matter was marked "not moved." In September 1964 a notice of motion to dismiss for lack of prosecution was served on the petitioner's attorney and when he failed to appear on the adjourned re-

turn date, November 24, 1964, the petition was dismissed. The formal judgment of dismissal for lack of prosecution was entered on December 7, 1964.

In June 1966 new counsel filed a motion to reopen the dismissal. The motion was accompanied by an affidavit of the petitioner which set forth that from November 15, 1964 to December 4, 1964 she was confined at the Elizabeth General Hospital and that she did not know her petition had been dismissed until she communicated with the Division in 1966 on the advice of her nephew Thomas W. Sharlow, Esq. An affidavit by Mr. Sharlow accompanied the petitioner's affidavit. Without taking any oral testimony the Division denied the motion to reopen. The testimony which was taken pursuant to our order discloses the following:

In December 1963 the petitioner was admitted to the New Jersey State Hospital at Marlboro and remained there until February 10, 1964 when she was placed on convalescent leave in the custody of her sister. Her final discharge note from Marlboro dated July 8, 1964 concluded as follows: "Diagnosis Schizophrenic Reaction, Paranoid Type. Prognosis: poor." On November 15, 1964 the petitioner was admitted to the Elizabeth General Hospital. Dr. Judd, a neuro-psychiatrist at the Elizabeth General, testified that when she was brought in she was "very delusional, hallucinating" and he thought she was suffering from "paranoid schizophrenia." He expressed the opinion that she was then insane and not able to take care of her affairs. She remained at Elizabeth General until December 4, 1964.

In June 1966 she was again admitted to the Elizabeth General and remained there for approximately a month. Dr. Judd testified that on this occasion the diagnosis was as before. He also examined the records of her second admission on April 11, 1967 to Marlboro where she remained until May 8, 1967. He stated that the diagnosis referred to in those records as "schizophrenic reaction, paranoid type" was the same as at the Elizabeth General and he expressed the view that while at Marlboro she was insane.

In her testimony, the petitioner had difficulty remembering her stays at Elizabeth General and stated that she knew nothing about the 1964 dismissal of her petition until she learned about it in 1966. Her attorney testified that he spoke to the petitioner on several occasions before the dismissal but "I couldn't appear to make her comprehend what I was telling her. She was irrational or at least she was nonresponsive in many of her conversations." He acknowledged that he did not attend on the adjourned return date of the motion to dismiss and that he had not requested a further adjournment. In response to a question as to what steps he took to advise the petitioner of the dismissal he said: "Well, I have no recollection, but as I discussed it with my secretary, we again attempted to make calls at the number she had and without success. In fact, my records indicate that there was no activity, there was no contact between us until 1966." In response to a question as to when he first knew that the petitioner had been in and out of mental institutions he said that he was aware from the beginning that she had been ill and he had surmised that "the illness was to a large extent, if not primarily, mental."

The record establishes that at the time of the dismissal, as well as other times, the petitioner was unable to take care of the affairs of herself and her minor children. If her competency had been duly brought to the attention of the Division, an appointment of a guardian *ad litem* would have followed. See *Division of Workmen's Compensation Rule* 1.1 of Section II (effective June 1, 1962); *cf. R. R.* 4:30-2; *Cohen v. Cohen,* 78 *N. J. Super.* 365, 373-74 (*App. Div.* 1963). While we do not subscribe to the petitioner's position that the absence of a guardian rendered the proceedings in the Division utterly void, we think it clear that once, as here, the incompetency is made to appear, steps should be taken, insofar as equitable, to undo the harm which may fairly be said to have resulted from the absence of a guardian. It must be borne in mind that, while unfortunately there has been inadequate representation of the petitioner and con-

siderable delay, the respondent has not been materially prejudiced, for the petition was actually filed within time, and it may be assumed that the respondent made full and timely investigation to support its denial of dependency compensation.

In *Stone v. Dugan Brothers of N. J.*, 1 *N. J. Super.* 13 (*App. Div.* 1948) the Appellate Division held that the Workmen's Compensation Bureau had power, comparable to that possessed by the courts (*R. R.* 4:62–2), to reopen judgments for fraud, mistake, inadvertence, or other equitable ground. This power was recognized as an inherent one, apart from the amendatory act (*L.* 1947, *c* 267; *R. S.* 34:15–54) which had then recently been enacted. That act provided that the Bureau could reinstate a dismissed petition within one year "for good cause shown." Its history suggests that it was intended simply as a grant of additional statutory power and not as a restriction on any preexisting inherent power.

In *Estelle v. Board of Education of Red Bank*, 14 *N. J.* 256 (1954) a petition was filed in October 1950 and was erroneously dismissed by the Division in February 1952. A law action which had been started by the plaintiff in 1951 was dismissed by this Court in 1954 in an opinion by Chief Justice Vanderbilt which pointed out that the plaintiff was not without remedy because the Division had power to reopen judgments "in instances of fraud, mistake, inadvertence and the like." 14 *N. J.*, at *p.* 261. The Chief Justice was undoubtedly referring to the Division's inherent power, for the one-year limitation in the statutory power (*R. S.* 34:15–54) had expired eleven months earlier. 14 *N. J.*, at *p.* 258.

As in *Estelle*, we are satisfied that the equities here are sufficiently strong to call for reopening of the dismissal, despite the fact that a year and a half elapsed between the dismissal and the motion for reopening. The petitioner never had her day in court on the merits though her showing before us indicates that she has a claim which should be heard on the merits. She was incompetent at the time of

the dismissal and knew nothing about it until 1966 when she moved expeditiously, through her nephew, to obtain new counsel. The respondent has suffered no material prejudice and, under the circumstances, it would be highly unjust to charge the petitioner with her attorney's omissions and forever bar her and her minor children procedurally without any adjudication on the merits. See *McLaughlin v. Bassing*, 100 *N. J. Super.* 67, 70 (*App. Div.* 1967) (dissenting opinion), reversed, 51 *N. J.* 410 (1968).

Reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.